UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TORRI A. BRACKINS,
     Plaintiff,

vs.                                        Case No.: 1:20cv22/EMT

ANDREW SAUL,
Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

     This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 4, 8).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381–83.[1]  Upon review of the record before the court, I find the Administrative Law

---

[1] As the Eleventh Circuit recently recognized, "because the Commissioner has delegated his authority to make the finding at the hearing level to an administrative law judge, the finding is

Judge (ALJ) erred with respect to the hypothetical questions posed to the vocational expert and that the ALJ's decision therefore should be reversed and the matter remanded for further proceedings consistent with this Memorandum Decision and Order.

## ISSUES ON REVIEW

Plaintiff raises two issues on appeal, arguing the ALJ erred in (1) assigning no functional mental limitations despite finding mild mental impairments and failing to incorporate functional mental limitations in a hypothetical question posed to the vocational expert; and (2) giving little weight to the opinions of treating physician John Charles Stevenson, M.D. (ECF No. 13 at 1, 33–34).

## PROCEDURAL HISTORY

On June 23, 2016, Plaintiff filed applications for DIB and SSI, alleging disability beginning June 8, 2016 (tr. 223–31).[2]   The applications were denied initially and on reconsideration (tr. 77–150, 153–69).   Plaintiff appeared for a

---

effectively reserved to the administrative law judge."   *Walker v. Soc. Sec. Admin., Comm'r*, No. 19-15039, 2021 WL 503280, at *3 (11th Cir. Feb. 11, 2021).

[2] The administrative record, as filed by the Commissioner, consists of thirty-three volumes (ECF Nos. 10–1 through 10–33) and has 1977 consecutively numbered pages.   References to the record will be by "tr.," for transcript, followed by the page number.   The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

hearing before an ALJ on January 22, 2019 (*id.* at 37–76).   On February 4, 2019,

the ALJ issued a decision finding Plaintiff not disabled under the Act (*id.* at 12–28).

Plaintiff petitioned the Appeals Council for review of the ALJ's decision (*id.* at 1,

219–21).   The Appeals Council denied the request (*id.* at 1–5).   The ALJ's decision

thus became the final determination of the Commissioner.   That determination is

now ripe for review in this court.

FINDINGS OF THE ALJ

The ALJ made the following findings in his written decision (*see id.* at 12–

36):

- Plaintiff meets the insured status requirements of the Act through December
  31, 2021 (*id.* at 17).

- Plaintiff has not engaged in substantial gainful activity since June 8, 2016, the
  alleged onset date (*id.*).

- Plaintiff has the following severe impairments: disorders of the spine and
  fracture of the left arm (*id.*).

- Plaintiff does not have an impairment or combination of impairments that
  meets or medically equals the severity of one of the listed impairments in 20
  C.F.R. Part 404, Subpart P, Appendix 1 (*id.* at 20).

- Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can occasionally lift/carry up to twenty pounds and frequently lift ten pounds; stand and/or walk and sit for six hours in an eight-hour workday with normal breaks; frequently push/pull with the left arm; frequently climb ramps/stairs, ladders, ropes, and scaffolds; frequently stoop; balance, kneel, crouch, crawl, and reach overhead in all directions without limitation; and frequently handle on the left and engage in frequent gross manipulation with the left hand. She needs to avoid concentrated exposure to extreme cold; vibrations; and hazards, including machinery and heights (*id.*).

- Plaintiff is unable to perform any past relevant work (*id.* at 26).

- Plaintiff has acquired skills from past relevant work (*id.*).

- Considering Plaintiff's age, education, work experience, and RFC, the skills Plaintiff has acquired from past relevant work are transferrable to other occupations with jobs existing in significant numbers in the national economy (*id.*).

- Plaintiff has not been under a disability, as defined in the Act, from June 8, 2016, through February 4, 2019, the date of the decision (*id.* at 27).

### STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).   A reviewing court also may not look "only to those parts of the record which support the ALJ" but, instead, "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."   *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).   Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."   *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[3]

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"   42 U.S.C. § 423(d)(2)(A).   An

---

[3] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.   *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

individual claiming Social Security disability benefits must prove she is disabled. *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014).   She also must prove she became disabled prior to the expiration of the date last insured in order to obtain DIB.   *See* 42 U.S.C. §§ 416(i)(3), 423(a) and (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a disability claim in five steps.[4]   "Throughout the process, the burden is on the claimant to introduce evidence in support of her application for benefits."   *Adams*, 586 F. App'x at 533.   The five steps are as follows:

1.   If the claimant is performing substantial gainful activity, she is not disabled.

2.   If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.   If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria

---

[4] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).   Therefore, citations in this Memorandum Decision and Order should be considered to incorporate the appropriate parallel provisions.   The same applies to citations of statutes or regulations found in quoted court decisions.

of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.   If the claimant's impairments do not prevent her from performing past relevant work, she is not disabled.[5]

5.   Even if the claimant's impairments prevent her from performing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's RFC and vocational factors, she is not disabled.[6]

At step five (or step four in cases in which the ALJ decides a claimant can perform past work), the ALJ formulates RFC through interpretation of the medical evidence and the claimant's subjective complaints, based on the impairments identified at step two.   *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "[R]esidual functional capacity is the most [a claimant] can still do despite [the claimant's] limitations.   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The ALJ relies on RFC to make the ultimate vocational determination required by step five.

---

[5] As set forth above, the claimant bears the burden of establishing a severe impairment that keeps her from performing past relevant work.   20 C.F.R. § 404.1512; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

[6] If the claimant meets her burden at step four, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.   *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).

## FACT BACKGROUND

Plaintiff was 54 years old on the alleged onset date (tr. 77, 91).  She has a high school education and work experience as a criminal justice technician and field service technician for a sheriff's office (*id.* at 40–42, 287–88).  Plaintiff alleges disability due to neck, back, hand, and wrist impairments, as well as depression and anxiety (*id.* at 77–78, 91–92).

Plaintiff testified at the hearing as to her impairments and the alleged effects thereof.   Plaintiff explained she had four surgeries on her neck and two fusions of her lumbar spine (*id.* at 59–60).   She said she needed additional imaging of her neck but was unable to afford it (*id.* at 60–61).   She also said Dr. Stevenson wanted to give additional injections for pain and that if that did not work, he would "probably have to go in and take care of some more discs" (*id.* at 61).   Plaintiff said her left arm was fractured (*id.* at 46–47).   She also said she had severe depression and anxiety and suffered from panic attacks (*id.* at 48).

Plaintiff testified she could sit for about fifteen minutes and stand for approximately ten minutes at a time (*id.* at 49).   She could walk "real slow" for about half an hour and used a walker when she had a pinched nerve (*id.* at 49–50).   She said her biggest problem was her neck (*id.* at 50).

Plaintiff said she could lift approximately six pounds (*id.*).   She also said she could pick up a gallon of milk but had to use two hands (*id.* at 50–51).   She could

climb approximately five steps before getting dizzy and cramping up with pain down her buttocks (*id.*).   She said she was unable to reach up to get something off a high shelf (*id.* at 52).   Plaintiff testified her left hand was weaker than her right and that she wore a brace on her right hand, which was going to require surgery (*id.* at 54). She could use her fingers to pick up small objects but was "not accurate" (*id.* at 54–55).   She could not squat or stoop due to pain in her lower back (*id.* at 55).

When asked about her daily activities, Plaintiff said she dressed and bathed herself (*id.*).   She cooked, washed dishes, did laundry, and cleaned, although vacuuming was "a little difficult" (*id.*).   She explained she had to vacuum for ten minutes at a time and then rest for about half an hour before resuming (*id.* at 55–56). She could drive but did not use the computer or read because she could not keep her head down without her arms going numb (*id.* at 56–58).   She said she watched television all day—from eleven o'clock in the morning until two o'clock the following morning—and did not attend church because she could not sit in the pews for any length of time (*id.* at 57–58).

A vocational expert, Jackson C. McKay, also testified at the hearing (*id.* at 38, 66–75).   Mr. McKay classified Plaintiff's past work as that of a sheriff's deputy, explaining that even though "she wasn't making arrests, . . . she was observing and assisting the public" (*id.* at 67).   Mr. McKay testified Plaintiff performed the

position at the heavy exertional level (*id.* at 67–68).   Mr. McKay also testified

Plaintiff would have acquired transferable skills through her position as a sheriff's

deputy, including "knowledge of the criminal justice system, specific knowledge of

emergency radio communications, and recordkeeping," which would transfer to the

job of emergency dispatcher (*id.* at 70–71).   According to Mr. McKay, a person of

Plaintiff's age, education, and work experience, with the RFC the ALJ assigned,

could perform the job of emergency dispatcher (*id.* at 72–73).   If the individual

required breaks throughout the day such that she was off task for twenty percent or

more of the workday, however, she could not perform that or any other position, as

all work would be eliminated (*id.* at 73).   The same would be true if the individual

was absent four or more times per month or limited to the performance of simple

and routine tasks (*id.* at 74–75).

DISCUSSION

I.     Mental Limitations

As indicated above, Plaintiff argues the ALJ erred in failing to include mental

limitations in the RFC and in a hypothetical question posed to the vocational expert.

The Eleventh Circuit has held that "where a claimant has presented a colorable claim

of mental impairment, the social security regulations require the ALJ to complete a

PRTF [Psychiatric Review Technique Form] and append it to the decision, or

incorporate its mode into his findings and conclusions." *Moore*, 405 F.3d at 1214; *see Mills v. Comm'r of Soc. Sec.*, 659 F. Appx 541, 542–43 (11th Cir. 2016) (citing *Moore*).   This technique requires rating the claimant's degree of functional limitation in four broad areas—ability to understand, remember, or apply information; ability to interact with others; ability to concentrate, persist, or maintain pace; and ability to adapt or manage oneself.  20 C.F.R §§ 404.1520a(c)(3) and 416.920a(c)(3); *see Moore*, 405 F.3d at 1213–14.   These functional areas can be rated none, mild, moderate, marked, or extreme.   20 C.F.R §§ 404.1520a(c)(4); 416.920(c)(4).   If the ALJ finds a mental limitation, even if non-severe, the ALJ must consider the limitation when determining RFC and document the findings and conclusions in that regard in the written decision.   20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3), 404.1520a(e)(4), 416.920a(e)(4).   The ALJ also must incorporate the limitation into a hypothetical question posed to the vocational expert.  *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011); 20 C.F.R. §§ 404.1523, 416.923, 404.1545(a)(2), 416.945(a)(2) (requiring adjudicators to consider the functional effects of even non-severe impairments when formulating RFC); SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").   Only if the limitation is included can the

vocational expert's testimony constitute substantial evidence in support of the ALJ's decision. *Winschel*, 631 F.3d at 1180–81; *Lanier v. Comm'r. of Soc. Sec.*, 252 F. App'x 311, 315 (11th Cir. 2007) ("In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments[,] . . . [b]ut the hypothetical need only include limitations supported by the record."). Failure to incorporate the limitation in the hypothetical necessitates remand. *Moore*, 405 F.3d at 1214.

In his decision, the ALJ found Plaintiff had medically determinable impairments of affective disorders, personality disorders, and substance addiction disorders (tr. 18). He further found that the impairments "do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities," when considered singly and in combination, and thus are non-severe (*id.*). The ALJ discussed evidence in the record pertaining to the disorders, including treatment records, and stated it "appear[ed] that the bulk of complaints [were] situational (related to job loss and loss of income)" and that "[t]he bulk of mental status exams following [the] alleged onset date [were] generally unremarkable . . . except for mild labile effect and dysphoric mood . . . and anxious mood/affect" (*id.*). The ALJ noted Plaintiff's memory was considered intact on multiple occasions, and her attention

and concentration were adequate (*id.*).   He also observed that Plaintiff's treatment "consisted primarily of medication management with some therapy" (*id.*).

The ALJ gave great weight to the opinions of Department of Disability Services mental health specialists, who opined Plaintiff's mental impairments did not cause more than mild functional limitation, finding they were supported by the overall record (*id.*).   The ALJ then explicitly addressed the four broad areas of mental functioning, finding mild limitation in each and setting forth the evidence of record upon which he relied in making such findings (*id.* at 18–19).

The ALJ explained that mental limitations do not constitute an RFC assessment but, instead, are used to rate the severity of mental impairments at steps two and three and that "[t]he mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments" (*id.* at 19).   The ALJ concluded by stating the RFC assessment set forth in the decision "reflects the degree of limitation [he] found in the 'paragraph B' mental function analysis" (*id.*).

Based on the above, the undersigned rejects Plaintiff's contention that the ALJ did not consider her mental limitations when formulating RFC—he plainly did. The undersigned agrees, however, that despite finding limitations in all four

functional areas, which the ALJ acknowledged may have caused some limitation in Plaintiff's ability to perform basic mental work activities, the ALJ did not include any such limitations in a hypothetical question posed to the vocational expert or otherwise account for them, relying instead only on the assigned RFC which incorporated no mental limitations.   The ALJ erred in that regard.   Accordingly, the undersigned finds this case should be remanded so the ALJ can incorporate Plaintiff's mental limitations into a hypothetical question posed to the vocational expert and render a decision that accounts for the vocational expert's response to the question posed.   *See, e.g., Winschel*, 631 F.3d at 1181 (reversing and remanding because the ALJ determined at step two that claimant's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace but did not indicate such impairment did not affect claimant's ability to work or otherwise implicitly account for the limitation in the hypothetical, holding "the ALJ should have explicitly included the limitation in the hypothetical question to the vocational expert").[7]

---

[7] Plaintiff also argues the record supports the contention that she has mental limitations that impact her ability to engage in sustained work activity (ECF No. 13 at 32–33).   Given the undersigned's finding that the ALJ erred in failing to include mental limitations in a hypothetical question posed to the vocational expert, the undersigned need not address whether the record, in fact, supports such assertion.

II.     Dr. Stevenson's Opinions

Plaintiff also argues the ALJ erred in giving little weight to the opinions of Dr. Stevenson, a treating physician.   In evaluating medical opinions, an ALJ considers a number of factors, including whether the doctor examined or treated the claimant, the evidence the doctor presents to support his or her opinion, and whether the opinion is consistent with the record as a whole.   *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).   "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."   *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x. 875, 877 (11th Cir. 2013).   An ALJ may choose to accept some conclusions—or restrictions—within an opinion while rejecting others.   If such a choice is made, in addition to explaining the overall weight given a particular medical opinion, the ALJ must explain "'with at least some measure of clarity the grounds for [a] decision'" to adopt particular aspects of a medical opinion. *Winschel*, 631 F.3d at 1179 (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).   Failure to explain the rationale for crediting only certain aspects of an opinion will result in a reviewing court "declin[ing] to affirm 'simply because some rationale might have supported the ALJ's conclusion.'"   *Id.*

A treating source's opinion generally is entitled to more weight, and an ALJ must give good reason for discounting such an opinion.   *See* 20 C.F.R.

§§ 404.1527(c)(2); 416.927(c)(2); *Winschel*, 631 F.3d at 1179.[8]  The opinion of a non-treating physician, however, is not entitled to any deference or special consideration.   *See* 20 C.F.R. §§ 404.1502; 404.1527(c)(1), (c)(2); 416.902, 416.927(c)(1), (c)(2); *Denomme*, 518 F. App'x at 877–78; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).   Moreover, opinions on certain issues, such as a claimant's RFC and whether a claimant is disabled, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(d), 416.927(d); *see* SSR 96-5p.   Opinions reserved to the Commissioner, even when offered by a treating physician, are not entitled to controlling weight or special significance.   *See* SSR 96-5p.   Indeed, "[g]iving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."   *Id.*   Therefore, although a physician's opinions about what a claimant can still do or the claimant's restrictions may be relevant, such opinions are not determinative because the ALJ is responsible

---

[8] On January 18, 2017, the Social Security Administration adopted new rules which, for claims filed after March 27, 2017, modify the rule of primacy for treating physicians' opinions.   82 F.R. 5844, 5869.   Because this claim was filed on June 23, 2016 (tr. 77–78, 91–92), the new rules do not apply.   82 F.R. 5869.

for assessing the claimant's RFC.   *See* 20 C.F.R. §§ 404.1527(d), 416.927(d), 416.945(a)(3), 416.946(c); SSR 96-5p.

On October 8, 2014, before the alleged onset date, Dr. Stevenson completed a Physical Assessment form in which he opined Plaintiff's symptoms were severe enough to constantly interfere with the attention and concentration required to perform simple work-related tasks (tr. 359, 1416).   Dr. Stevenson indicated Plaintiff's medications caused drowsiness and that she would need to recline or lie down during an eight-hour workday in excess of normal breaks (*id.*).   Dr. Stevenson opined Plaintiff could walk only half a block before needing rest or experiencing significant pain and could sit and stand/walk a total of only two hours each in an eight-hour workday (*id.*).   He said Plaintiff would need to take unscheduled breaks every thirty minutes, which would last five minutes (*id.*).   Finally, Dr. Stevenson indicated Plaintiff could frequently lift less than ten pounds but never lift more than ten pounds and would be absent from work four or more days per month (*id.* at 359–60).

Dr. Stevenson completed another Physical Assessment form on November 2, 2016 (*id.* at 1584).   Dr. Stevenson noted he treated Plaintiff for failed cervical and lumbar surgeries (*id.*).   He again indicated Plaintiff's medications caused drowsiness (*id.*).   He reiterated that Plaintiff's symptoms were severe enough to

constantly interfere with the attention and concentration required to perform simple work-related tasks and that Plaintiff would need to recline or lie down during an eight-hour workday in excess of normal breaks (*id.*).   This time, Dr. Stevenson said Plaintiff could not walk any distance without experiencing pain and could sit and stand/walk a total of only one hour each in an eight-hour workday (*id.*).   He imposed the same lifting/carrying restrictions as in the first assessment and again opined Plaintiff would be absent from work four or more days per month (*id.* at 1584–85).

Dr. Stevenson completed a third Physical Assessment form on May 10, 2017 (*id.* at 1738, 1741).   He stated Plaintiff's medications caused drowsiness, dizziness, upset stomach, balance issues, and an inability to think clearly (*id.* at 1738).   He once again said Plaintiff would need to recline or lie down during an eight-hour workday in excess of normal breaks, could not walk any distance without experiencing pain, and could sit and stand/walk a total of only one hour each in an eight-hour day (*id.*).   He indicated Plaintiff would need to take unscheduled breaks every fifteen minutes, lasting up to five minutes at a time, and could frequently lift/carry up to ten pounds but never more (*id.*).   Dr. Stevenson opined Plaintiff could use her hands, fingers, and arms only five percent of the day and would be absent from work four or more days per month (*id.* at 1738–39).

The ALJ gave the opinions Dr. Stevenson expressed in the Physical Assessment forms little weight, finding as follows:

> As for the [first Physical Assessment form], the undersigned gives this little weight as it was given back in 2014 (prior to the alleged onset date).   As for the [subsequent assessments], the undersigned gives them little weight.   Although these limitations were given by a treating provider, they were actually not supported or consistent with treatment notes that have revealed she has been managed with medications. With regard to limitations given back in October 2016 . . . , those were not consistent with postoperative records indicating that [Plaintiff] was doing well (with regard to h[er] lumbar spine) postoperatively . . . . The evidence shows minimal follow up for her alleged lumbar complaints leading up to the [October 2016 assessment].   As for the [May 2017 assessment], the undersigned does not finds [sic] that this is supported by treatment notes (in light of rather limited treatment notes other than some injections and surgery) but limited follow up to support such severe limitations. Moreover, it was noted that she was not able to think clearly but this is simply not documented in the treatment records as well.

(*id.* at 25).

In arguing the ALJ erred in discounting Dr. Stevenson's opinions, Plaintiff points out that Dr. Stevenson had "the most longitudinal treating relationship of any provider in the record," having treated Plaintiff for twelve years (ECF No. 13 at 24). Plaintiff contends the ALJ's conclusion that Dr. Stevenson's opinions were unsupported or inconsistent with treatment notes that reveal she was managed with medications "is belied by any common sense reading of the medical evidence and . . . a blatant mischaracterization of the evidence" (*id.*).   Plaintiff says she was not

managed by medication alone, as evidenced by the fact that she had six surgeries on her cervical and lumbar spine and three surgeries related to wrist and hand impairments over the course of seven years.   Plaintiff characterizes the ALJ's statement that the bulk of her treatment was conservative as "blatantly absurd given the extent of Plaintiff's spinal deformities and hand/wrist impairments" (*id.* at 28). Plaintiff references her treatment records, including Dr. Stevenson's notes indicating she had failed conservative treatment and even surgeries.   Plaintiff argues that in giving little weight to Dr. Stevenson's opinions, the ALJ mischaracterized the medical record and substituted his opinion for that of Dr. Stevenson, warranting remand.

Given the fact that this matter is being remanded due to the ALJ's failure to incorporate Plaintiff's mental limitations into a hypothetical question posed to the vocational expert, the undersigned need not determine whether the ALJ also erred in giving little weight to Dr. Stevenson's opinions.   It bears noting, however, that many of the ALJ's reasons for discounting Dr. Stevenson's opinions are supported by the record.   For example, the opinions expressed in the 2014 Physical Assessment form are of limited relevance because Dr. Stevenson completed the form nearly two years before Plaintiff's alleged onset date.   *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (noting "[m]edical opinions

that predate the alleged onset of disability are of limited relevance") (cited in *Jones v. Saul*, No. 1:19cv123/CAS, 2020 WL 1704411, at *16 (N.D. Fla. Apr. 6, 2020)); *see also Goff ex rel. Goff v. Comm'r of Soc. Sec. Admin.*, 253 F. App'x 918, 922 (11th Cir. 2007) (distinguishing between medical opinions offered during the relevant time period and those that related back several years).   The 2014 opinions also are inconsistent with Plaintiff's work as a criminal justice technician through June 2016, in which capacity Plaintiff—according to her own testimony—lifted boxes and bags weighing sixty to seventy pounds, and did so up to ten to twenty times per day (tr. 40–41, 286, 300).   Moreover, many of the opinions expressed in the 2016 and 2017 forms are inconsistent with Dr. Stevenson's treatment notes (*see, e.g.*, tr. 22–26, 960, 962, 1018, 1302, 1584, 1707, 1713, 1738, 1810, 1818, 1827). Considering Plaintiff's medical history, however, particularly the numerous neck and back surgeries, the undersigned recommends that, upon remand, the ALJ revisit the issue of Plaintiff's physical RFC and the weight assigned to Dr. Stevenson's opinions.[9]

---

[9] Plaintiff also contends the ALJ impermissibly substituted his judgment for that of Dr. Stevenson. The undersigned rejects Plaintiff's argument in that regard.   Although an ALJ may not arbitrarily substitute his judgment for that of a medical professional, as Plaintiff asserts, an ALJ does not do so simply by discounting the weight given a physician's opinion.  *See, e.g., Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 488 (11th Cir. 2012) (ALJ did not substitute her opinion for that of a doctor where she gave the opinion little weight based on its inconsistency with other evidence in the record); *Wind v. Barnhart*, 133 F. App'x 684, 691 (11th Cir. 2005) (finding ALJ

<u>CONCLUSION</u>

For the foregoing reasons, the undersigned finds the ALJ erred in failing to incorporate mental limitations in a hypothetical question posed to the vocational expert and that the ALJ's decision therefore should be reversed and the matter remanded with instructions that the ALJ pose a hypothetical question to a vocational expert that accounts for the mental limitations he found and render a decision that takes into consideration the vocational expert's response to the question posed.[10]   42 U.S.C. § 405(g); *Lewis*, 125 F. 3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The undersigned also recommends that, upon remand, the ALJ revisit the issue of Plaintiff's physical RFC and the weight assigned to Dr. Stevenson's opinions.

Accordingly, it is hereby **ORDERED**:

1.      Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**.

---

did not substitute his opinion for, and properly discounted, doctor's opinion based in part on claimant's statements of daily activities, noting that "[c]hoosing between conflicting evidence is a task particularly suited to the fact finder").

[10]  The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.   *See Moore*, 405 F.3d at 1208.

2.     The Commissioner is directed to remand this case to the ALJ for the purpose of the ALJ posing a hypothetical question to a vocational expert that accounts for the mental limitations he found and rendering a decision that accounts for the vocational expert's response to the question posed.   The undersigned also recommends that, upon remand, the ALJ revisit the issue of Plaintiff's physical RFC and the weight assigned to Dr. Stevenson's opinions.

3.     The clerk of court is directed to enter judgment accordingly and close the file.

**DONE AND ORDERED** this 18th day of March 2021.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**